The Honorable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this honorable court may draw near, give their evidence, and they shall be heard. God save the United States of America at this honorable court. You may be seated. The court is in session. Are we on the record yet? Yes. Okay, before we start today, Dan, today is quite a momentous day for the First Circuit and for one of our colleagues, Judge Kermit Lopez. This is the last day he'll be sitting with the First Circuit Court of Appeals. He joined our court in 1998, in April of 1998, so if you're good at math, which I'm not, that means this is a little more than 28 years of sitting on the court. We've tried to calculate how many times that means you've sat. We think it's more than 400 days of sitting on the court and hearing cases, and during that time, Judge Lopez has authored more than 800 majority opinions of the court and over 100 separate writings, either concurrences or dissents. I won't tell you how many of those dissents were in response to opinions that I authored, but I know his wife Nancy is in the audience today, and it's been a great honor and a great pleasure to have you as both a friend and a colleague, Kermit, and so we wish you all the happiness afterwards, and we thank you for everything you've done for the court. Thank you very much, Chief Judge Barron, Judge Rickleman. It has been the privilege of a lifetime to serve on this court, and that makes it very hard to begin to phase out, but I have nothing but gratitude for the opportunity that I have had to do this work. I do want to very briefly recount one story. In 1999, I had been on the court, really I think for less than a year, and I don't think I had ever presided because of my lack of seniority, but it happened that in 1999, I was assigned to sit with Judge Bailey Aldrich on the last day that he sat after serving for 41 years. The other judge on the panel was a visiting judge, Phyllis Kravitch, from the 11th Circuit. She had then been sitting for about 20 years, so I was on a panel that included 61 years of service, and I had had less than one, and I think it was the first time that I presided, so I decided, as Chief Judge Barron has kindly done, to say some nice things about Judge Aldrich and try to summarize his remarkable career. I did that, the argument began, and I think because I was so excited by presiding, I got a little carried away, and I was dominating the argument with my questions, when suddenly I heard at my side, and everybody else in the courtroom heard it too, Judge Aldrich saying to me, Judge Lopez, do you mind if somebody else asks a question? So, Judge Aldrich had always been a formidable judge, and was a formidable judge to the very end, so perhaps this is a cautionary tale for Chief Judge Barron. Or Judge Lopez. Yes, fair enough. Anyhow, thank you very much again. Okay, and I note we will be graced with the presence of your wonderful portrait, even though you won't be in the room with us. Okay, with that, let's begin the cases. Today's cases will be called as previously announced. The times will be as allotted to counsel. The first case today is number 25-1607, United States v. Hector Maldonado Maldonado. At this time, would counsel for the appellant please come to the podium and introduce himself on the record to begin? Good morning, Your Honors. May it please the Court, José David Rodríguez, on behalf of Mr. Maldonado, may I please request two minutes for rebuttal? You may. Thank you. In Maldonado I, this Court held that the government advocacy at the sentencing hearing and in a sentencing memorandum breached the plea agreement. As remedy, this Court remanded for resentencing before a different judge. The purpose of that remedy was to provide a clean slate before a judge untainted by the breach. On remand, the new District Court violated the mandate of Maldonado I by consulting sua sponte, the sentencing transcript and the government sentencing memorandum, the two documents containing the breach, before resentencing Mr. Maldonado. By so doing, the new Court became as exposed to the breach as the original Court was, violating both the letter and the spirit of Maldonado I, confirming that the error was not harmless. Is the contention that it relied on the material that constituted the breach or that it was exposed to it? Because it's going to be exposed to it just by reading the opinion, right? No, Your Honor. No, because first the Court here reviewed those documents, the sentencing transcript and the sentencing memorandum and assessed the arguments. So it not only reviewed but also consulted. But it's going to be aware of the government's breaching argument just from reading the opinion in our case, telling us what the mandate is. No, Your Honor, for one big reason. This Court's opinion provided a one-line sentence describing the nature of the breach in order to explain the decision. That's very different from the multiple pages of breaching advocacy with the government's reasons and the government's inflammatory arguments. So that's what I'm just asking. Are you saying that it's enough if they were exposed to that then, even if there's no indication that it relied on those arguments? I would say that it is improper for the Court to consult the tainted materials. But here it's even more than that because the Court also said that it had assessed the arguments in those materials. Counsel, there's certainly nothing in the language of our opinion that would suggest to the district court that it could not be exposed to, could not read whatever part of the record the judge wished to consult. There's nothing in our opinion that puts that off limits. So you must be somehow relying on the spirit of the mandate, which is what you referred to. But again, as Judge Barron's pointed out, if the Court just reads our opinion, the Court is going to know virtually everything that the record would confirm. So I don't even understand how the spirit of the mandate was violated because the Court really tells the district court judge everything that happened previously. Your Honor, if the opinion tells the Court everything, there will be no point. It will be superfluous for the Court to remand before a new Court because that Court will already be exposed. Not if we didn't think exposure was enough to taint the proceeding on remand, and if instead we thought the only problem would arise if there was actual reliance on that argument, or if the government somehow itself violated the spirit by, again, advancing those arguments, which it did not do here. In that case, Your Honor, here the Court relied on the breaching arguments. And the Court expressly said that when saying, I assessed, among other documents, the arguments in the confirmation sentencing memorandum from the original proceeding. Unless my colleagues want to ask further about this, you have a second argument about why there would need to be a remand, about the additional evidence that the district court relied on about which there wasn't notice. Is that right? Yes, Your Honor. You want to just address that? The Court also, during resentencing, referred to extra record information about alleged disciplinary incidents in prison, information that was not part of the record. I take the government's response on that as it's not prejudicial because, again, there's not an indication that the consideration of that extra evidence didn't make a difference in the case because it had already determined there was a pattern, and there was a pattern established by independent evidence in the record, even if we set aside the extra record evidence. Two responses, Your Honor. First, the Court expressly connected the new information to its assessment of Mr. Maldonado's risk of recidivism and to rebut his argument of rehabilitation. And the Court expressly said that in the record. The pattern, if the focus is on the pattern, these latest alleged incidents are the most relevant ones and the ones that present. If we set aside the new extra record ones, what is the time gap from the last incident established by the pattern until now? Six years to 15 years. And then if we add in these, these would be basically contemporaneous? The new ones? Yes.  That's exactly right. Counsel, can I – Please, go ahead. Just to follow up on that. So if I'm remembering correctly, the underlying conduct was something like August 2020. Is that right? Yes. And so then when did these disciplinary infractions occur? What were the dates? The new information that the Court introduced?  Well, allegedly after the sentence in 2022. So post-2022 until the date of the resentencing.  But you don't know when in that three-year time span? No. Within those three years. And the last of them would have been 2025? Or do we know if anything was as late as 2025? Well, the record – what the record has is that I think the Court mentions that there was one in 2024. That's the latest that the Court mentioned. Counsel, I mean, I gather your client was trying to convince the Court that I finally learned my lesson. I'm a new person, and hence you don't have to worry so much about recidivism, disrespect for the law. But that – I gather this is your argument, that contention that he was a new person and had learned his lesson was belied by these five somewhat recent disciplinary infractions. I mean, I think it's your argument that it's impossible to read the judge's rationale for the sentence that was imposed without concluding that those recent infractions very much undermine his contention that I'm a new person and I've learned my lesson. Is that basically your argument? The argument is, Your Honor, that – and if I may respond to this question. The argument is that the Court relied on non-recorded information without giving notice, without – for Mr. Maldonado to provide an adequate response, contextualize, give his explanation. But I think Judge Lopez asked you – and the reason that was prejudicial is because given the recency of those new violations, if they were true, it would undermine your argument that you were a changed person. Exactly right. And that's what the Court said at page 102 of the appendix, where she said you have argued that you have rehabilitated, but there are these new – Assuming we agreed with you on that, you're suggesting what should we do now that we're – this would be the third remand in the case? Yes. Yes. Well, our remedy – the remedy we are requesting on that issue, the extra record reliance, is sending the case back to a different judge for resentencing. That's the same remedy that this Court imposed recently in Rosa Borges for a similar error. For our mandate rule violation, which – and I wish to – if I can add this. The Court not only assessed and relied on the breaching documents. The Court also adopted – and the Court said that – said it in so many words that it was considering the findings of the original breach-impacted court. But when we remand – if we were to follow your suggestion and to remand to a third judge, is that for just plenary resentencing then yet for a third time, or what? You're not making any recommendation – just beyond that, just remand to a third judge? If the error is – if the – yes. Just remand for consideration by a different judge. But counsel, if we were – if we were to accept the argument that given the history and the relatively short period of time left in a sentence, under those extraordinary circumstances we were to order that he be sentenced a time served, why would we send it back to a third judge? There'd be nothing left – there'd be nothing left for that judge to figure out. That's the main point, and Mr. Maldonado has lost by this point practically every piece of bargaining that he obtained from waiving his constitutional rights and pleading guilty. He has served – The release date is what, September? Yes, and he has already served three times more than the maximum sentence recommended in the plea. This is an unusual case, and like in curricular, this court has the – the proper remedy should be the remedy that most fully – Well, excuse me, counsel, there's a bail motion pending, right? There is, Your Honor. And so your rationale might be in part if we were inclined to look favorably upon your position, it would make sense to – assuming all the other factors are positive for your client – it would be to grant that bail motion while we prepare our opinion and get it out. And again, if it were favorable to you, that would alleviate the concern that he is needlessly serving additional time if he were out on bail, right? Right, Your Honor. By this point, any moment that Mr. Maldonado could be released would be getting him at least an ounce of the remedy. It depends what we're trying to remedy. If we're remedying the breach of the plea agreement, I understand the logic of it. If that's not what we're remedying, and instead we're remedying the finding of extravagant evidence, then the issue is, well, okay, it's true that if we agreed with you, given the way the district court wrote the opinion, those new violations may have figured into its determination that the person wasn't changed. But that wouldn't preclude a district court on the same record from concluding, even without that evidence, given his history of violations, et cetera, a sentence of this length was appropriate. So what would be the justification for, in that circumstance, putting aside the breach issue, for us then pretermitting that sentencing process and saying, no, the sentence has to be time served? If I'm understanding Your Honor correctly, the remedy for the issue number two, the reliance on the extra record material, the remedy would be sending the case back for a new judge unexposed to that new information. And so not a time served sentence? That is the remedy we are requesting for the mandate rule violation. Setting aside the mandate rule point, what remedy are you asking for as to the extra record evidence point? Remanding for resentencing before a different judge. Not time served? That's correct. Okay. Thank you. Thank you, Counsel. At this time, would Counsel for the Government please introduce herself on the record to begin? Good morning, Your Honors. Excuse me. May it please the Court, Maria Luhtru for the Government. This Court should affirm Mr. Maldonado's sentence because the district complied with this Court's mandate and did not commit any reversible procedure as to the notice issue. Now, I wanted to start by correcting one specific factual indication that my brother, Counsel, made. Mr. Maldonado's release date is October 19th. As of right now, it was pushed back just recently for about a month. I will start with addressing the notice issue. I don't know if I followed that. So, pushed back meaning? It's one month later than Mr. Maldonado's counsel had indicated. So, the release date now is October? October 19th. Correct, Your Honor. So, I wanted to start by addressing the notice issue because this is where this Court's question is mostly focused on as well. And here, while there was no notice as to the five infractions, it was harmless because it did not affect the district court's sentence in this case. And why? We know that from Record 105, page 105 of the appendix, the district court explicitly said so. It explicitly responded to Mr. Maldonado's objections and said that the infractions did not affect the imprisonment term of the 71 sentence that the district court proposed. We see that a fair amount. When defense counsel objects, the district court then realizes that it may have made an error. And so, to protect the record, an understandable instinct to say, well, even if that was a mistake, it wouldn't have made any difference. But in that situation, we have often looked at what the judge said before the sentence was imposed, not this sort of after-the-fact attempt to cleanse the record. And it's hard to read the judge's rationale for the sentence that was imposed without concluding that those recent infractions, no notice was given to the defendant, that those would be considered, that those recent infractions were critical to the court's decision. But no, you're not a new man. You're not rehabilitated. You still don't respect the law. You're still a threat. It seems to me that's what matters, not the after-the-fact statement. So how do you respond to what the judge actually said before imposing the sentence? I have several responses to Your Honor's question. One, not only did the district court on page 105 say that it didn't consider it after objections, but in looking at what the district court said during the sentencing hearing itself, when evaluating the sentencing factors, it focused on Mr. Maldonado's conduct. It focused on three pages. It discussed the conduct in this case. And on page 105, the district court specifically said, I am issuing the sentence in this case based on the offense conduct and not based on the infractions. Can I ask you about that? Because on page 105, this is the district court, I think. So I want to make clear, I want to leave the record clear that the mentioning of the administrative charges or remarks were mentioned solely for the purposes of prognosis of rehabilitation. That gives me some concern that he was taking into account substantively because prognosis of rehabilitation would seem quite relevant to the very question the defendant was putting on the table, which is whether he had changed. Well, the question here, Your Honor, is whether, and what Mr. Maldonado brings before the court, is whether the court's sentence, the 71 months of imprisonment, was affected by the infractions. And here, this is, the exchange is, so I want to make clear, I want to leave the record clear, this is the district court, that the maintaining of the administrative charges or remarks were mentioned solely for the purpose of prognosis of rehabilitation. Then counsel says, and to the extent it was involved in any way in the calculations of the sentence, we object without having prior notice. To which the district court said, as I said, they were not. The sentence was imposed based on this, but then the district court says, and you know what I'm about to read, right? So what's your answer to that? The district court then says, of course, the court takes into consideration the prognosis of rehabilitation or rehabilitation of this defendant, which he just had said, and I don't know, I forget who the district court was, but the district court had just said, that's the very thing, prognosis, that led me to consider these administrative charges. So I can fully understand it would be a different case if the district court said, I just am not relying on that, I note it, but it played no role. But how could we read this passage to be saying that? This passage goes to show that the district court considered it for purposes of rehabilitation, but it didn't consider it for the sentence itself, but it considered it for the specialized supervised release conditions, and we know that based on the bail pending appeal hearing that happened three weeks prior to the hearing here, where the district court said, again reiterated, that those five instances did not play part in the district court sentence, the 71 months, and that's on page 29 and 30 of that bail pending appeal hearing. That is not before this court based on the bail pending appeal that was filed. So your view is that all that it played a part of was the portion of the sentence that was not carceral? That is correct, Your Honor. And even on that, then there would have to be a remand, wouldn't there? Again, and then comes the point of pattern that the district court was concerned here. The district court was concerned with the pattern. Yeah, but the pattern is important. The pattern wouldn't exist without considering a pattern is all the things put together. You can't carve out the last part without it not being a pattern. Right. To respond to Your Honor's questions, I think it would help to take a step back and look at what happened at the sentencing hearing and the record more in a broader view. Here we have the PSR that the district court considered that laid out 24 different infractions in this case, even without the five new ones the district court had mentioned at the sentencing hearing. And those 24 infractions were quite similar to the five new ones. So there was nothing new in terms of these infractions and these violations. But isn't that just an argument for why rather than a time served sentence, we would vacate and remand for the district court? If the district court determined that pattern alone, that set of incidents itself formed a pattern that was enough to support a sentence of this kind, that would be one thing. But as the record comes to us, all we know is that the pattern that it looked at included extra record things, which you acknowledge there was no notice of. Yes, which you acknowledge there was no notice of. But the government's position is that this was a pattern. The PSR lays out the pattern. The 24 prior violations, including five violations after Mr. Monada committed the offense in question. And the PSR on the last page specifically notes the pattern of violations. So that pattern was already something that was. . . Well, maybe just to give you a chance to address this part, because as I understand it, the defense counsel's assessment is, or contention is, it's one thing for a defendant who's been given notice of a pattern of conduct that has occurred to get up and say, I'm aware of what I did, but I'm different. I'm not going to do that anymore. And it's a different thing for the defendant to have just made that argument, only to find out that actually the pattern he's supposed to be saying he didn't engage in includes a set of very recent incidents he had no notice of. That's totally impeaching of his contention. I mean, I recognize Your Honor's concern in reading the record. But again, I'm pointing Your Honor's back to what the district court said. The district court explicitly said, I am not considering these for the sentencing, for the imprisonment term. I'm not considering these. She said it explicitly twice. She repeated it at the bail-bending appeal hearing, and she explained at bail-bending appeal that she considered these the pattern of violation for purposes of the supervised release conditions because she was concerned with the recidivism in the rehabilitation. And the special conditions of supervised release laid out the mental health treatment options, including focus on anger management issues. This is what the court was concerned with. It was concerned with the pattern and wanted to make sure there was a potential for rehabilitation and a lesson that there was a possibility to rehabilitate Mr. Maldonado. Counsel, assuming we were to find that a remand is required, we get to the issue of remedy. With respect to the prior remand, it was the government's position with respect to sentence that the defendant should be sentenced to time served at that time. Is that correct? That's correct. And I assume, acting in good faith, that would continue to be your position on remand. That is correct. Okay. So as this were to play out, we write our decision explaining why the remand is necessary. We try to do it expeditiously for sure under these circumstances. It then gets rescheduled for sentencing. Arguments are heard. If the government's position continues to be he should be sentenced to time served, another three or four months might go by. At that point, there are only a few months left. That assertion that he be sentenced only to time served has less and less value for him as time goes on. So if we're going to conclude that there was an error here because of the consideration of these disciplinary factors, shouldn't we say promptly to give him at least some value from the plea agreement that was reached way, way back that he should be sentenced to time served? If we don't do that, the value of that remedy just gets less and less and less as each day passes, doesn't it? I believe my time is up. May I respond? Yes. The question here, the government's position is that there is no reason for remand. However, if the court were to remand in doing a limited remand that way, that would limit the district court's discretion. This is an extreme remedy that's applied in very unusual cases that this court has recognized. In making the limited remand here, it would basically die the district court's hands while it's true that the government is bound by the plea agreement that the government would, again, ask for a time served sentence at this point. You're in an awkward position to be advocating for anything other than a time served sentence, given the plea agreement. We would ask for time served if there were a remand, but the government's position is... We understand that's a distinct question from what the discretion of the district court is as to sentencing, which I take is all you're saying. That is correct, Your Honor. Thank you. If there are any further questions to be asked, let this court defer. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record? He has a two-minute rebuttal. Good morning, Your Honors. Jose David Rodriguez on behalf of Mr. Maldonado. Your Honors, in regards to remedy, this court has said that in breach cases specifically, it has considerable latitude to shape the remedy that best conforms to the equities. This is an unusual case, and our position is the remanding court relied on the breach, but even if the court were to... The court did not have to find reliance, the breach has had a long-lasting effect, in this case, across two appeals now. And remanding with instructions to impose a time served disposition, in this case, under these unusual circumstances, on Maldonado II, where his release date is less than six months away, and he has served more than three times the plea-recommended sentence, would be a fair remedy. Now you're saying that that's the remedy you want even for the non-breach violation in this case? Our position is that this is a breach case, Your Honor. I understand, but when I earlier asked you, you said that if we found a breach of the mandate, then you were recommending time served. But if we found that you were right about the second type of violation, which is not a breach of the mandate, then we should just have a vacate and remand for ordinary resentencing to a new judge, so they're not tainted by the extra record evidence. That's the remedy we put in the brief for the second issue. If the court were to... You're not going to impose if we... Yes. I just ask you before you sit down to address the bail proceeding arguments. I take it the government's position is that if we consult the bail hearing, it will become evident that that prognosis and rehabilitation language bears only on the supervised release conditions, not on the carceral sentence. What do you say to that? Well, Your Honor, even if it only mattered for supervised release conditions, supervised release conditions are still part of the sentence. Yeah, yeah, but it would affect maybe our judgment about whether time served or vacating and remanding for full resentencing would occur. So could you just address, do you have any answer to why we should read this language as being about the carceral portion of the sentence rather than the supervised release conditions? Well, yes, Your Honor. The court said that in so many words. Also, I'm reading from page 102 of the appendix. The court says, while the defendant allocated that he has learned his lesson and that he now has control of his emotions, the truth of the matter is that the record proved him wrong because after he was sentenced in this case, he has committed four other violations. He has no respect for the law. And as I said, the risk of restitutivism is high. Those are essentially the last words the court said before imposing the carceral sentence. Thank you. Thank you, Your Honor. Thank you, counsel. That concludes argument in this case.